# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
### SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Charles Odom, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | Case No. 1:10-cv-00085 |
| | ) | |
| Kenan Kaizer, | ) | |
| | ) | |
| Defendant. | ) | |

_____

Odom, a state prisoner, is suing Kaizer pursuant to 42 U.S.C. § 1983 for giving false evidence in support of a complaint and warrant for Odom's arrest on charges to which he later pled guilty. Odom contends that probable cause was lacking for his arrest and that his Fourth Amendment rights were violated.

Before the court now is Kaizer's motion for judgment on the pleadings. For the reasons set forth below, it recommended that the motion be denied.

## I.    BACKGROUND

### A.    Odom's claim in this case

Odom is suing Kaizer individually under 42 U.S.C. § 1983 for violating his federal constitutional rights in connection with his arrest on December 4, 2005, on charges of possession of drug paraphernalia and marijuana, relating to events that occurred in January 2004, some two years earlier. Odom alleges that Kaizer appeared before a state court judge some eight months prior to his arrest to swear out a complaint and obtain an arrest warrant. He alleges that Kaizer gave false testimony, either intentionally or recklessly, which was material to the court's determination of

probable cause and without which the warrant would not have been issued. Odom seeks only monetary damages.

**B.      State criminal proceedings**

**1.      The events at the Select Inn in January 2004**

On January 20, 2004, Bismarck police received a 911 call from an individual by the name of Riddle Johnson. Johnson advised officers that he had locked himself in the bathroom at the Select Inn in Bismarck because another individual, who he identified as Odom, had threatened him with assault for the purpose of collecting on a drug debt. Bismarck police responded to the motel and eventually discovered several items of drug paraphernalia in the room where Johnson was located after having received permission to search the room. Odom v. State, 2010 ND 65, ¶¶ 2; 780 N.W.2d 666. Beyond these bare facts, it is not clear what may be in dispute regarding the events of January 20, 2004.

**2.      The complaint and arrest warrant**

Apparently, Odom was not arrested in January 2004 when police responded to the Select Inn, and it was not until April 25, 2005, some sixteen months later, that Kaizer went before a state district court judge to swear out a complaint and obtain a warrant for Odom's arrest. Odom v. State, 2010 ND 65, ¶¶ 2-3. Why the authorities waited so long is not clear.

Kaizer presented oral sworn testimony in support of the complaint and arrest warrant in lieu of submitting an affidavit, which the court understands is a common local practice. Based solely on Kaizer's testimony, the state district judge found there was probable cause for the charges set forth in the complaint, namely felony possession of drug paraphernalia and misdemeanor possession of a small quantity of marijuana, and issued a warrant for Odom's arrest. Id.

As will be discussed in more detail later, the North Dakota Supreme Court stated in one of its subsequent opinions that Kaizer's testimony was inaccurate in two respects. Also, in the same opinion, the court set forth additional "facts" relating to the events of January 20, 2004, that were not reflected in Kaizer's testimony, and what the court relied upon as the source for these facts is not clear at this point.

### 3. Odom's arrest and a second set of charges

On December 4, 2005, approximately seven months after the arrest warrant was issued, the manager of the Days Inn called Bismarck police to report suspicious activity on the part of a Charles Odom who had just checked in at the motel. See Odom v. Brutger Equities, Inc., No. 1:06-cv-038, 2007 WL 1611923, **2-3 (D.N.D. June 1, 2007); Odom v. State, 2010 ND 65, ¶ 4. The police responded and arrested Odom outside the Days Inn on the still outstanding warrant for the charges of possession of drug paraphernalia and marijuana arising out of the events at the Select Inn almost two years earlier. Following Odom's arrest, police searched his room. In the room's safe, they found a digital scale covered with cocaine residue, a bundle of cash, and crack cocaine. Odom v. State, 2010 ND 65, ¶ 4; State v. Odom, 2006 ND 209, ¶¶ 2-6, 722 N.W.2d 370.

There is some information which suggests that Odom was held in custody on the charges that are the subject of this action and, at some point later, a second set of charges was brought against him for possession of cocaine with the intent to deliver and possession of drug paraphernalia based on what was discovered in his room's safe at the Days Inn. State v. Odom, 2006 ND 209, ¶¶ 2-6, 722 N.W.2d 370. It is not clear at this point what process was used to initiate the second set of charges. However, it does appear that the state district court conducted a combined preliminary

hearing sometime in January 2006 on both sets of charges and that Odom was bound over to stand trial on the charges.  Odom v. State, 2010 ND 65, ¶ 5.

### 4.        Disposition of the first set of charges

According to subsequent decisions of the North Dakota Supreme Court,  Odom changed his plea to guilty on the first set of charges, which are the subject of this case, on September 6, 2006, and was immediately sentenced to time served and a small fine.  Odom v. State, 2010 ND 65, ¶ 5. However, upon learning that he would not be released because of the charges pending in the second case, Odom immediately moved to withdraw his plea of guilty.  A judgment of conviction was entered on September 13, 2006, which was followed by another motion to withdraw the guilty plea. On April 11, 2007, the state district court denied the motions to withdraw the plea of guilty. Thereafter, it does not appear that a direct appeal was taken from either the judgment of conviction or the order denying the motions to withdraw the plea of guilty.  See Odom v. Kaizer, No. 1:07-cv-019, 2009 WL 2709395, *3 (D.N.D. Aug 24, 2009).  In any event, the North Dakota Supreme Court in Odom v. State, denied his request for postconviction relief on the first set of charges as discussed in more detail in a moment.

### 5.        Disposition of the second set of charges

As for the second set of charges, the state district court initially suppressed the evidence from the search of the safe in Odom's room at the Days Inn on the grounds that Odom's consent to the search of his room did not extend to the room's safe.  However, the State's Attorney took an immediate appeal and the North Dakota Supreme Court reversed the trial court's decision in State v Odom, supra.   See also Odom v. State, 2010 ND 65, ¶ 5.

In June 2007, Odom entered a conditional plea of guilty to the second set of charges after the district court denied his motion to suppress the evidence. He was sentenced to twenty years' incarceration. On January 17, 2008, the North Dakota Supreme Court summarily affirmed the criminal judgment in State v. Odom, 2008 ND 2, 747 N.W.2d 136. See Odom v. State, 2010 ND 65, ¶ 5.

### 6.    Odom's petition for post-conviction relief

Odom next filed a state petition for post-conviction relief in March 2008, arguing that he had been denied effective assistance of counsel. Odom contended that his attorney should have requested a transcript of the testimony given by Kaizer in April 2005 in support of the warrant for his arrest and uncovered his allegedly false testimony, which Odom contended made his arrest unlawful. Odom v. State, 2010 ND 65, ¶ 6. The state district court denied the petition, concluding that Odom's counsel's performance was not ineffective and also that Odom had not suffered prejudice. With respect to the latter, the district court concluded that, notwithstanding the inaccurate testimony, sufficient other evidence had been presented to establish probable cause. Id. ¶ 6.

On April 6, 2010, the North Dakota Supreme Court affirmed the district court's order denying Odom's petition for post-conviction relief, but on more limited grounds. The court agreed that Odom had failed to prove that his counsel's representation was ineffective. And, because of that conclusion, the court stated it was unnecessary to consider whether or not Odom had suffered prejudice, i.e., whether there was sufficient other evidence to establish probable cause. Id. at ¶ 13.

### C.    Proceedings in Odom v. Kaizer I

On March 20, 2007, Odom filed a § 1983 action against Kaizer and several other named defendants. Odom v. Kaiser, No. 1:07-cv-019. Odom alleged, among other things, that Kaizer

provided false information that was used in support of a complaint and warrant for his arrest. Odom sought both equitable relief, *i.e.*, dismissal of his state charges, and damages for pain and suffering and mental anguish.

Initially, the court stayed this action because of Odom's ongoing state criminal proceedings. When those proceedings were completed, the court conducted a preservice screening as required by 28 U.S.C. § 1915A and concluded that Odom's complaint stated two possible § 1983 claims: one akin to the common law tort of malicious prosecution and the other a claim for selective enforcement. Odom v. Kaizer, No. 1:07-cv-019, 2009 WL 2709395, *6 (D.N.D. Aug. 24, 2009) ("Odom v. Kaiser I"). With respect to the malicious prosecution claim, the court concluded the claim was Heck barred and also that there was no claim as a matter of law because Odom had pled guilty to both the first and second set of charges and that favorable termination is an essential element of the claim of malicious prosecution, citing Heck v. Humphery, 512 U.S. 477, 484 (1994) ("Heck") and Kummer v. City of Fargo, 516 N.W.2d 294, 298 (N.D.1994). Id. at *8. The court also observed in a footnote that Odom did not have a separate claim for "false arrest" since his arrest was pursuant to a complaint and arrest warrant, which made his claim one for malicious prosecution only, citing Wallace v. Kato, 549 U.S. 388-390 (2007) ("Wallace"). Id. at *8 n.7.

Odom appealed the court's preservice dismissal, and the Eighth Circuit affirmed, stating summarily that it "found no basis for reversal." Odom v. Burleigh County Detention Center, 369 Fed.Appx. 767, 2010 WL 1223163 (8th Cir. 2010) (unpublished per curiam).

**D.    Proceedings in this case**

Odom next commenced this action by filing a new *pro se* complaint; this time (1) naming Kaizer as the only defendant, (2) limiting his suit only to the allegation that Kaizer violated his

constitutional rights by intentionally or recklessly providing false information in support the complaint and warrant for his arrest, and (3) limiting his relief to only monetary damages. In its preservice screening, this court noted that the present complaint was simply a trimmed-down version of the prior complaint, the dismissal of which had already been affirmed on appeal. The court then dismissed the present complaint on the same grounds stated in the preservice screening in Odom v. Kaiser I, *i.e.*, (1) that Odom did not have a § 1983 claim as a matter of law because his claim was akin to one for malicious prosecution, given that his arrest was pursuant to a complaint and warrant (citing Wallace), and because his criminal action had not terminated in his favor, which is an essential element of the common law tort of malicious prosecution (citing Heck and North Dakota law governing malicious prosecution), and (2) that the claim was Heck barred given the perceived necessity of proving successful termination of his criminal prosecution. In addition, the court also held that Kaizer was entitled to absolute immunity. Odom v. Kaizer, No. 1:10-cv-00085, 2011 WL 30568 (D.N.D. Jan. 5, 2011) (order of dismissal adopting report and recommendation and discussing absolute immunity as an additional grounds for dismissal); Odom v. Kaizer, No. 1:10-cv-00085, 2010 WL 5505715 (D.N.D. Dec. 9, 2010) (report and recommendation).

This time the Eighth Circuit reversed, stating, in relevant part, the following:

> North Dakota inmate Charles Odom appeals the district court's preservice dismissal of his 42 U.S.C. § 1983 complaint. Following our de novo review, we conclude that Odom's allegations—that Bismarck Police Detective Kenan Kaizer knowingly gave false information while testifying in support of issuance of an arrest warrant—were sufficient to state a claim that his Fourth Amendment rights were violated. See Reynolds v. Dormire, 636 F.3d 976, 978–79 (8th Cir.2011) (standard of review; in reviewing district court's dismissal for failure to state claim, appellate court accepts as true all factual allegations contained in complaint and affords all reasonable inferences that can be drawn from those allegations); Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir.1996) (warrant based on affidavit containing deliberate falsehood or reckless disregard for truth violates Fourth Amendment; official who causes such deprivation is subject to § 1983 liability).

The claim is not barred under <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), because Odom's success on the claim would not necessarily imply the invalidity of his convictions or sentences, <u>see</u> <u>id.</u> at 486–87; and Kaizer is not entitled to absolute immunity, <u>see</u> <u>Malley v. Briggs</u>, 475 U.S. 335, 340–44, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (denying absolute immunity to police officers who applied for arrest warrants; complaining witnesses were not shielded by absolute immunity at common law, and police officer applying for arrest warrant was not analogous to prosecutor seeking indictment).

Accordingly, we reverse the district court's judgment and remand for further proceedings consistent with this opinion.

<u>Odom v. Kaizer</u>, 2011 WL 2078543, *1.  Essentially, the Eighth Circuit concluded that Odom's complaint stated a Fourth Amendment claim, citing <u>Bagby v. Brondhaver</u> ("Bagby") and that the claim was not <u>Heck</u> barred.

In <u>Bagby</u>, the Eighth Circuit held that an official who deliberately or with reckless disregard for the truth provides materially false information in support of an arrest warrant violates the Fourth Amendment and is subject to liability under § 1983.  <u>Bagby</u>, 98 F.3d at 1098.  As a shorthand reference, this claim will be referred to either as a "<u>Bagby</u>" or "judicial deception" claim to distinguish it from other species of Fourth Amendment cases for an arrest without probable cause.[1]

---

[1]  Without explicitly so stating, the Eighth Circuit's declaration that Odom has stated a Fourth Amendment claim and that the claim is not <u>Heck</u> barred appears to be a rejection of this court's conclusions that the tort of malicious prosecution is the appropriate analog for Odom's Fourth Amendment claim and, more importantly, that termination of the criminal proceedings in favor of the plaintiff is an affirmative element of the claim.  In so concluding, the Eighth Circuit cited to its prior decision in <u>Bagby</u>.  However, while <u>Bagby</u> recognized a Fourth Amendment "judicial deception" claim, the elements of the claim were not spelled, since the primary issue there was one of qualified immunity, and there is a difference between <u>Bagby</u> and this case.  In <u>Bagby</u>, the criminal proceeding initiated by the warrant allegedly obtained by deception appears to have been resolved in the plaintiff's favor.  <u>Bagby</u>, 98 F.3d at 1098; <u>see</u> <u>Restatement (Second) of Torts</u> §§ 659-660 (1977) (discussing what constitutes termination in the plaintiff's favor for the tort of malicious prosecution).  Here, Odom's judgment of conviction still stands.

Outside of the Eighth Circuit, a number of the other federal circuit courts have concluded that a §1983 Fourth Amendment claim involving an arrest pursuant to a warrant is akin to a claim for malicious prosecution based upon the common law distinctions between the torts of false arrest/imprisonment and malicious prosecution discussed in <u>Wallace</u>, 549 U.S. at 388-90 and <u>Heck</u>, 512 U.S. at 484.  <u>See</u>, <u>e.g.</u>, <u>Harrington .v City of Nashua</u>, 610 F.3d 24, 30 (1st Cir. 2010); <u>Wilkins v. DeReyes</u>, 528 F.3d 790, 798-99 (10th Cir. 2008); <u>Nieves v. McSweeney</u>, 241 F.3d 46, 54 (1st Cir.2001); <u>Singer v. Fulton Cnty. Sheriff</u>, 63 F.3d 110, 117 (2d Cir.1995). In addition, a number of these same courts have stated, albeit sometimes only in passing, that termination of the criminal prosecution in favor of the plaintiff is an element of a Fourth Amendment malicious prosecution claim.  <u>E.g.</u>, <u>Grider v. City of Auburn</u>, 618 F.3d 1240, 1256 (11th Cir. 2010);

(continued...)

---

[1](...continued)

McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009); Wilkens v. DeReyes, 528 F.3d at 802-02; Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002); see Nieves v. McSweeny, 241 F.3d at 53.

In rejecting this approach here, the Eighth Circuit appears to have taken an approach similar to that of the Sixth Circuit in Sykes v. Anderson, 625 F.3d 294 (6th Cir. 2010). In Sykes, the Sixth Circuit recognized a Fourth Amendment claim involving an arrest pursuant to a warrant lacking probable cause separate from any Fourth Amendment malicious prosecution claim encompassing "wrongful investigation, prosecution, conviction, and incarceration." Id. at 305-08; see also Harrington v. City of Council Bluffs, Iowa, 678 F.3d 676, 679 (8th Cir. 2012) (stating in *dicta* that the Fourth Amendment claims involving plaintiffs' arrests pursuant to a warrant were claims for "false arrest."); but see id. at 682-83) (Colloton, J., dissenting) (stating the majority had "mistakenly characterized" plaintiffs' claims and because the arrests were pursuant to a warrant, "their Fourth Amendment claims are analogous to claims of malicious prosecution and not false arrest.").   At the very least, the Eighth Circuit appears to have concluded that termination of any subsequent criminal prosecution in favor of the plaintiff is not an *affirmative* element of a Fourth Amendment Bagby type of claim, given its conclusion that Odom's complaint states a claim and should not have been dismissed preserve for this reason.

More generally, the Supreme Court has stated that, while common law tort principles are a starting point for giving definition to § 1983 claims, not every common law tort element need be applied, particularly when to do so would frustrate § 1983's purpose of providing a remedy for constitutional violations committed under color of law when they have occurred. See, e.g., Heck v. Humphery, 512 U.S. 477, 492-496 (1994) (Souter, Blackmun, Stevens, & O'Conner, J.J., concurring); Pierce v. Gilchrist, 359 F.3d 1279, 1285-90 (10th Cir. 2004). And here, good arguments can be made for ignoring the common law distinctions and allowing Odom a remedy for an arrest that may have been in violation of the Fourth Amendment even though he pled guilty and his damages may be limited. See Brown v. Sudduth, 255 Fed.Appx. 803, 804-805, 2007 WL 3283777, *2 (5th Cir. 2007) (guilty plea was neither a waiver nor a bar to a Fourth Amendment claim for an arrest without probable cause) (unpublished per curiam); Lang v. City of Round Lake Park, 87 F. Supp. 2d 836, 841-45 (N.D. Ill., 2000); Boyce v. Woodruff, 979 F. Supp. 817 (N.D. Ind. 1997); cf. Haring v. Prosise, 462 U.S. 306 (1983) (holding that a guilty plea did not foreclose a § 1983 claim for violation of Fourth Amendment rights based on an unlawful search); Edwards v. Balisok, 520 U.S. 641, 645 (1997) (nominal damages for procedural due process violation).

But in the Eighth Circuit, even though the court appears to have concluded here that successful termination of the criminal prosecution is not affirmative element of Odom's Bagby claim, his guilty plea *may* still be a defense.  This is because the Eighth Circuit has concluded in other cases that a § 1983 remedy is not available for an arrest without probable cause in violation of the Fourth Amendment if the plaintiff has pled guilty to the charges for which the "premature" arrest was made. E.g., Williams v. Schario, 93 F.3d 527, 528-29 (8th Cir.1996) ("Williams") (published per curiam); Malady v. Crunk, 902 F.2d 10 (1990) ("Malady").  In so concluding, the Eighth Circuit adopted the policy reasons for not allowing a § 1983 remedy expressed by the Second Circuit Second Circuit in Cameron v. Fogarty, 806 F.2d 380 (2d Cir. 1986) ("Cameron").  Malady, supra (quoting extensively from Cameron).

Williams and Malady appear to still be good law in the Eighth Circuit. E.g., Whitehead v. Garrett, 2012 WL 13703, *2 (E.D. Mo. Jan. 4, 2012) (plaintiff's arrest without probable clause foreclosed by a guilty plea, citing Williams); Gautreaux v. Sanders, 2010 WL 1433432, *3 (W.D. Ark. Mar. 11, 2010) (same, citing Williams and Malady); see Thurmond-Green v. Hodges, 128 Fed.Appx. 551, 552, 2005 WL 775387, *1 (8th Cir. 2005) (acknowledging Williams and Malady, but concluding that they did not apply because plaintiff pled guilty to charges other than those for which he  was arrested) (unpublished per curiam); Carmi v. City of St. Ann, Missouri, 22 Fed.Appx. 674, 674-75, 2001 WL 1525821, *1 (8th Cir. 2001) (unpublished per curiam) (plaintiff's Alford plea extinguished his arrest and search claims, citing Williams); see generally Martin A. Schwartz, Section 1983 Litigation Claims & Defenses § 3:19, pp. 3-642 to 3-648 & n. 3471 (4th ed. current through 2012-1 Supp.) (stating that Cameron and Malady are still good law in their respective Circuits but criticizing the cases). And, while Malady and Williams were not "judicial deception" cases, that may be a distinction without a difference since the essence of a Bagby claim for purposes of liability under § 1983 is a Fourth Amendment violation, *i.e.*, a seizure lacking in probable cause. See Bagby, 98 F.3d at 1099 (liability only applies if probable cause is lacking after the affidavit is corrected to eliminate that which is false or misleading); cf. Franks v. Delaware, 438 U.S. 154, 171-72 (1978).

## II.   DISCUSSION

### A.   Introduction

Before the court now is Kaizer's motion for judgement on the pleadings.  In his motion, Kaizer assumes Odom has a stated a Fourth Amendment claim as a matter of law and limits his argument for dismissal to his qualified immunity defense.  In addition, he asks the court to rule that Odom is entitled only to nominal damages.

### B.   Qualified immunity

#### 1.   Governing law

The determination of qualified immunity is ultimately a question of law and requires a two-step inquiry:  "(1) [whether] the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) [whether] the right was clearly established at the time of the deprivation." Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (quotation omitted).  The defendant has the burden of proof with the exception that the plaintiff must demonstrate that the law allegedly violated was clearly established.  Hunington v. City of Council Bluffs, Iowa, __ F.3d __, 2012 WL 1470266, *2 (8th Cir. 2012).

The Supreme Court has instructed that the issue of qualified immunity be resolved "at the earliest possible stage of the litigation." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quotation omitted); see Mathers v. Wright, 636 F.3d 396, 399 (8th Cir. 2011).  This is because the defense is "an immunity from suit rather than a mere defense to liability" and "is effectively lost if a case is erroneously permitted to go to trial."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); see id.   In addition, a "driving force behind creation of the qualified immunity doctrine was a desire to ensure

that insubstantial claims against government officials be resolved prior to discovery." <u>Pearson v. Callahan</u>, 555 U.S. at 231 (quotation omitted).

That being said, not all cases in which qualified immunity is claimed can be resolved based upon the allegations in the pleadings. Sometimes discovery is required and, in rarer cases, a trial may be necessary to ascertain disputed facts that are critical to resolution of the defense. <u>See</u>, <u>e.g.</u>, <u>Ortiz v. Jordan</u>, __ U.S. __, 131 S.Ct. 884, 892-93 (2011); <u>Rohrbough v. Hall</u>, 586 F.3d 582, 586-87 (8th Cir. 2009).

At this stage of the proceeding, the court is confined to considering only those facts that are fairly encompassed in Odom's complaint. <u>Cf.</u> <u>Mathers v. Wright</u>, 636 F.3d at 399 (stating that the defendant must show he is entitled to qualified immunity based on the face of the complaint to prevail on a motion to dismiss).

### 2. Odom's constitutional right was clearly established

As already observed, Odom alleges in his complaint that Kaizer gave false testimony in support of the complaint and warrant for his arrest on the first set of charges arising out of the January 2004 events at the Select Inn. (Doc. No. 4). In particular, he references the North Dakota Supreme Court's decision in <u>Odom v. State</u>, 2010 ND 65, wherein the court stated that Kaizer's testimony was inaccurate in two respects. The first was testimony indicating that the room from which Riddle Johnson made his 911 call and where drug paraphernalia was later recovered was registered to Odom. According to the court, the room was registered to a third person by the name of Galen Smith. <u>Id.</u> at ¶¶ 2-3. The second piece of inaccurate testimony was that marijuana was found in the motel room. According to the court, the marijuana was actually recovered from a pickup truck that was not registered to Odom. <u>Id.</u>

The right under the Fourth Amendment to a determination of probable cause based upon a truthful factual showing was clearly established when Kaizer gave the testimony that is the subject of this action.   Hunter v. Namanny, 219 F.3d 825, 829 (8th Cir. 2000) ("Hunter");  Hulse v. Hall, 205 F.3d 1346 (table), 1999 WL 1295320, *1 (8th Cir. 1999) (unpublished per curiam) ("Hulse"); Bagby, 98 F.3d at 1098; see Franks v. Delaware, 438 U.S. 154 (1978).  So also was the fact that this Fourth Amendment right is violated when information is provided, either deliberately or in reckless disregard of the truth, that is material to the determination of probable cause and without which a warrant would not have issued.  Id.

Kaizer does not dispute that the court must accept as true for purposes of his motion the allegations by Odom that his testimony was inaccurate.  He also appears to agree that the court must assume for purposes of his present motion that he provided the false information either knowingly or in reckless disregard for the truth.[2]  Consequently, the remainder of the discussion will focus on the first step of the two-step inquiry for qualified immunity, *i.e.*, whether the facts, viewed in the light most favorable for Odom, demonstrate the deprivation of a Fourth Amendment violation.[3]

---

[2]   But even if Kaizer does not agree with this point, the alleged false testimony involved more than minor misstatements and was clearly material to the determination of probable cause for reasons articulated later. As a consequence, the alleged false testimony alone supports an inference of at least recklessness. See, e.g., Murray v. Lene, 595 F.3d 868, 872 (8th Cir. 2010); Hunter, 219 F.3d at 830; Bruner v. Baker, 506 F.3d 1021, 1026  (10th Cir. 2007).

[3]   This is not to say that the "clearly established" prong of qualified immunity is definitively resolved in Odom's favor.   As the case progresses, the facts material to the "clearly established" prong may change.

### 3. Kaizer's argument that there was no deprivation of Odom's Fourth Amendment rights

#### a. Introduction

Kaizer's argument for qualified immunity based on the pleadings is that, even if the court assumes the falsity and materiality of his testimony, he is still entitled to qualified immunity based on the case law holding that an officer giving false information in support of an arrest or a search warrant is entitled to qualified immunity if the information presented, after proper correction for that which is false, would still support a finding of probable cause. E.g., Hunter, 219 F.3d at 830; Hulse, 1999 WL 1295320, *1; see Bagby, 98 F.3d at 1099 (but leaving open the issue of whether the "corrected affidavit" doctrine should apply in the case of a deliberate falsehood). Proper correction as contemplated by these cases includes not only excising the information that is false, but also adding information known to the authorities, which, if originally included, would have tended to vitiate the determination of probable cause. E.g., Hunter, 219 F.3d at 830.

Because not all of the information necessary to address this argument is contained in the pleadings, Kaizer relies upon the North Dakota Supreme Court's decision in Odom v. State, which affirmed the denial of Odom's petition for post-conviction relief, to supply what additional information is required. In particular, Kaizer's brief quotes from the court's background discussion of: (1) the events that occurred in January 2004 at the Select Inn; (2) the substance of Kaizer's testimony in support of the complaint and warrant for Odom's arrest, including the purported inaccuracies and the testimony that was accurate; and (3) the state district court's conclusion in the postconviction relief proceedings that sufficient other information was presented in support to establish probable cause. Kaizer argues that this background information can be relied upon on a motion for judgment on the pleadings, citing to authority which states that the court can consider

not only the pleadings themselves, but also matters embraced by the pleadings, including exhibits and matters of public record.

However, it is not clear that Odom has embraced all of the North Dakota Supreme Court's background discussion in <u>Odom v. State</u>. Even though Odom attaches a copy of the decision as an exhibit to his complaint, he makes specific reference only to that part of Kaizer's testimony that the North Dakota Supreme Court referred to as being inaccurate. Also, in his response to the present motion, Odom refers to the actual transcript of Kaizer's testimony.

Under these circumstances, Kaizer's actual testimony will be used in considering his argument for qualified immunity, rather than the North Dakota Supreme Court's characterization of it. Even though the transcript of his testimony is outside the pleadings, there is no unfairness in relying upon it here, without turning the present motion into one for summary judgment, since both parties reference the testimony, the transcript is a matter of public record, and neither party appears to contest its accuracy.

Finally, in making his argument that sufficient additional correct information was presented in Kaizer's testimony to establish probable cause, Kaizer places particular emphasis on the state district court's determination to that effect in Odom's post-conviction relief proceeding. But what is not entirely clear is (1) whether Kaizer is arguing that this decision is now binding on Odom, regardless of whether it is right or wrong, (2) whether he is arguing that sufficient other evidence existed based on the facts and that his reference to the state district court's decision is simply additional support for that argument, or (3) whether he is making both arguments. What creates some doubt is that Kaizer neither explicitly states the decision is now binding nor cites any authority

for why it must now be given preclusive effect.   Nevertheless, what follows is discussion of both arguments.

### b.      The state district court's determination in Odom's postconviction relief proceedings is not binding

As noted earlier, Odom filed a petition for postconviction relief alleging that his trial counsel was ineffective in failing to uncover Kaizer's alleged false testimony in support of the complaint and arrest warrant on the first set of charges.   The state district court denied Odom's petition on two grounds.   The first was that Odom's counsel was not ineffective in failing to uncover Kaizer's alleged false testimony and the second was that there was sufficient other information to support a determination of probable cause.   Odom v. State, 2010 ND 65, at ¶ 6.   On appeal, the North Dakota Supreme Court affirmed, but only on the grounds that Odom's counsel was not ineffective.   Id. at ¶ 12.   The court stated that it did not need to address the district court's alternative ground that Odom had suffered no prejudice because of sufficient other information to establish probable cause. Id. at ¶13.

Kaizer cites no authority for why Odom is now bound by the state district court's conclusion that sufficient other information was presented to establish probable cause.   In fact, the law is to the contrary.   The Restatement (Second) of Judgments sets forth the following rule governing issue preclusion:

> § 27. Issue Preclusion-General Rule
> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement (Second) of Judgments § 27 (1982).  Then, in Comment *i* to § 27, which the North Dakota Supreme Court has expressly adopted as being the law in North Dakota, the Restatement states in relevant part:

> *i. Alternative determinations by court of first instance.* If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone.

Id. at § 27, Comment *i*; see Vanover v. Kansas City Life Ins. Co., 438 N.W.2d 524, 526 (N.D.1989) (quoting with approval Comment *i*); see also Baker Elec. Co-op. v. Chaske, 28 F.3d 1466, 1475 (8th Cir. 1994) (citing Vanover).  Thus, it is clear that the state district's court alternative determination of there being sufficient other evidence to establish probable cause falls squarely within the Restatement's Comment *i*.

In addition, the North Dakota Supreme Court's decision on appeal does not change this result.  The Restatement (Second) of Judgments in Comment *o* to § 27 states the following regarding the impact of an appeal of a lower court decision that is based on alternative grounds:

> If the judgment of the court of first instance was based on a determination of two issues, either of which standing independently would be sufficient to support the result, and the appellate court upholds both of these determinations as sufficient, and accordingly affirms the judgment, the judgment is conclusive as to both determinations. In contrast to the case discussed in Comment *i*, the losing party has here obtained an appellate decision on the issue, and thus the balance weighs in favor of preclusion.

> If the appellate court upholds one of these determinations as sufficient but not the other, and accordingly affirms the judgment, the judgment is conclusive as to the first determination.

> If the appellate court upholds one of these determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is conclusive as to the first determination.

*Id.* at § 27, comment *o*.  In other words, since the North Dakota Supreme Court limited its decision to affirming only the district court's denial of Odom's petition on the grounds that his counsel was not ineffective, no preclusive effect attaches to the alternative grounds that Kaizer relies upon here.

       **c.**      **There was not sufficient other accurate testimony to establish probable cause construing the facts most favorably to Odom**

In making a determination of probable cause for a complaint and arrest warrant, a judicial officer must consider "the persuasiveness of the facts relied upon by the complaining officer" and "not accept without question the complaint's mere conclusion that the person ... has committed a crime."  Giordenello v. United States, 357 U.S. 480, 485-86 (1958).  The determination requires information sufficient to lead a prudent person to believe there is a fair probability the accused, and not someone else, committed the offense(s) for which the complaint and arrest warrant are sought.  See id.; Wong Song v. United States, 371 U.S. 471, 481 & n.9 (1963);  Bruner v. Baker, 506 F.3d 1021, 1026 (10th Cir. 2007) ("Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual has committed the crime.") (quotation omitted); cf. Hunter, 219 F.3d at 830-31.  And, while the determination of probable cause requires something less than a *prima facie* case and is to be made upon commonsense consideration of the totality of the circumstances, mere suspicion, surmise, and conjecture are not enough.  See id.; Illinois v. Gates, 462 U.S. 213, 235–36 (1983) (discussing the same standard that applies for search warrants);  Terry v. Ohio, 392 U.S. 1, 21-29 (1968) (contrasting the standard of probable cause with the lower of standard that permits a "stop-and-frisk"); United States v. Ventresca, 380 U.S. 102, 107–08 (1965); Hunter, 219 F.3d at 830-31.

In this case, Kaizer testimony in support of the complaint and warrant for Odom's arrest was as follows:

THE FOLLOWING PROCEEDINGS WERE HELD IN CHAMBERS AS FOLLOW:

THE COURT:     An application for a Criminal Complaint entitled State versus Charles Odom, charging him with possession of drug paraphernalia and possession of marijuana on January 21st, 2004.  The complainant is Officer Kenen Kaizer of the Bismarck Police Department.

Officer Kaizer, do you swear the testimony you are going to give now will be the truth, nothing but the truth, so help you God.

OFFICER KAIZER:     I do.

Keenan Kaizer

Having been first duly sworn, was examined and testified as follows:

EXAMINATION:

BY THE COURT:

Q.     Count One is the felony charge of possession of meth paraphernalia.  What is your information about that?

A.     On 1-20, 2004 at 22:43 the Bismarck Police Department received a 911 call from a cell phone.  The caller advised he was at the Select Inn at 1505 Interchange Avenue and that he had locked himself in the bathroom as he was afraid of being assaulted.

Police officers arrived and at that time spoke to the complainant Riddle Johnson.  At that time Riddle explained to officers that he had gone to the motel room which was registered in the name of Charles Odom.  He had previously purchased narcotics, mainly cocaine, from Mr. Odom and he was going back there to repay him for the debt for the drugs.

He indicated that the didn't have all the money and that Mr. Odom told him that before he could leave the room he had to pay all the money that was owed to him or he would assault him.  At that time Mr. Johnson locked himself in the bathroom and called.

Officers then arrived and got the consent to search the motel room.  In the search of the motel room there were several pieces of drug paraphernalia that were found in the bathroom as well as on the table in the bedroom.  Those items included smoking devices and straws which were sent to the State Lab, which came back positive for cocaine.

There was also .66 grams of cannabis or marijuana that was found in the motel room.

Q.     The paraphernalia language is specific to methamphetamine.

A.     Okay.

Q.     Is there meth paraphernalia involved or is it cocaine?

A.     A metal spoon that we thought was meth paraphernalia.  The ones we got positive back from the lab we had several items of paraphernalia that we believed

18

were from methamphetamine and it came back unable to analyze. And the only thing they did find was items that had cocaine on them. I would say it's cocaine.

     Q.     Should I - - I will change the Complaint to reach methamphetamine or cocaine.

     A.     Okay.

     Q.     You've got some paraphernalia that you thought was meth paraphernalia but there wasn't enough to - -

     A.     - - sample - -

     Q.     Enough of a sample to get an analysis, right?

     A.     The paraphernalia used for methamphetamine is very similar to cocaine when it's smoked in a smoking form.

     Q.     Okay. All right. There is probable cause for the Complaint.

(Doc. No. 52).

Beginning first with the possession of marijuana charge, when the allegedly false information about the marijuana being found in the motel room and the room being registered to Kaizer are excised from Kaizer's testimony and replaced by a statement that the marijuana was recovered from a vehicle not registered to Odom, there is nothing in what remains to establish a nexus between Odom and the marijuana, much less that Odom was ever in possession of it. Under these circumstances, no reasonable judicial officer would have determined there was probable cause for charging Odom with the offense of possession of marijuana. Cf. Hunter, 219 F.3d at 830-31.

As for the charge of possession of drug paraphernalia, no evidence is presented in Kaizer's testimony of Odom's physical possession of the drug paraphernalia Thus, the question is whether there is enough information to establish probable cause of "constructive possession" after his testimony is corrected for that which is false.

To demonstrate constructive possession, there must be some evidence that the "accused had the power and the capability to exercise dominion and control" over the item in question. State v. Demarais, 2009 ND 143, ¶ 8, 770 N.W.2d 246; see also State v. Morris, 331 N.W.2d 48, 53-55

19

(N.D. 1983); see generally 25 Am. Jur. 2d Drugs and Controlled Substances § 156 (Database updated Feb. 2012). This necessarily includes some evidence, direct or circumstantial, from which it can be inferred that the accused had actual knowledge of the contraband's existence. See id.

In this case, it appears that the state judge who issued the warrant for Odom's arrest relied upon the testimony that the room was registered to Odom to infer constructive possession. See, e.g., State v. Christian, 2011 ND 56, ¶ 13  795 N.W.2d 702 (evidence that the bedroom where the drugs were recovered was the accused's relevant to the issue of constructive possession). But, when this allegedly false information is excised, the only information that remains in Kaizer's "bare bones" testimony is that Riddle Johnson went to a room at the Select Inn where he was threatened by Odom and where drug paraphernalia was later recovered. There are several reasons why this would not be enough to persuade a reasonable judicial officer that probable existed for the charge of possession of drug paraphernalia.

First, there is nothing in the testimony which remains that explicitly states Odom was ever in the room. Based on the limited facts presented by Kaizer, Odom could have threatened Johnson from outside the room or from its threshold. And, without at least placing Odom in the room, there is nothing tying him to the drug paraphernalia that was recovered, much less establishing a basis for inferring constructive possession.

Second, even if a fair inference from what Kaizer said about Johnson going to the motel and being threatened by Odom was that Odom was in the room, his mere presence would not by itself be enough to establish constructive possession. Something more is required to draw the inferences, first that Odom was aware of the drug paraphernalia and second that he had the power and authority to exercise dominion and control. E.g., United States v. Rodriguez, 392 F.3d 539, 548-49 (2d Cir.

2004); Holmes v. Kucynda, 321 F.3d 1069, 1079-84 (11th Cir. 2003); Sundin v. State 27 So.3d 675

(Fla. Dist. Ct. App. 2nd Dist. 2009) ("Sundin"); see United States v. Staten, 581 F.2d 878, 844-55

(D.C. Cir. 1978) (discussing cases).

For example, in Sundin, supra, police had a motel room under surveillance because of

suspected drug activity and observed the defendant going out onto a balcony on a couple of

occasions to smoke cigarettes. When the police raided the room, the defendant was lying on one bed

and a female was lying on the other bed. On a table in between the two beds, there were items of

drug paraphernalia in plain sight and within arm's reach of the defendant. Sundin, 27 So.3d at 676.

In concluding that the trial court erred in not granting the defendant's motion for judgment of

acquittal on the grounds that there was insufficient evidence to prove the defendant's constructive

possession of the drug paraphernalia, the Florida appeals court stated the following:

> Having determined that the State did not prove Sundin was in actual
> possession of the pipe, we turn to the issue of constructive possession. In order to
> establish constructive possession, the State must prove that the defendant had
> dominion and control over the contraband and knew the contraband was within his
> presence. Robinson v. State, 975 So.2d 593, 595 (Fla. 2d DCA 2008). If the State
> proves that the contraband was in plain view, then the defendant's knowledge of the
> contraband's presence is established. Brown v. State, 428 So.2d 250, 252 (Fla.1983).
> However, the issue of control is not established by the fact that the contraband is in
> plain view unless the accused is an occupant or owner. Id. In the event the accused
> is a mere visitor in jointly possessed premises, then the State must establish control
> of contraband in plain view by independent evidence. Taylor v. State, 319 So.2d 114,
> 116 (Fla. 2d DCA 1975).
>
> As we stated previously, the State's evidence established nothing more than
> that Sundin was a visitor of a resident of room 221. Without independent proof of
> Sundin's control over the pipe, the State failed to establish his constructive
> possession of the cocaine or paraphernalia. See J.S.M., 944 So.2d at 1144-45
> (holding that the State failed to prove that a hotel visitor had control over marijuana
> found in plain view in a hotel room because the State did not provide any evidence
> other than the defendant's mere proximity to the marijuana); Wade v. State, 558
> So.2d 107, 108 (Fla. 1st DCA 1990) ("Because appellant was only a visitor, rather
> than someone who owned, leased, or resided in the room, his mere proximity to the
> contraband found in plain view was insufficient to convict him.").

Id. at 677.

In this case, after excising out the information that the room was registered to Odom and inserting that it was registered to a third person by the name of Galen Smith, there is nothing in the remainder of Kaizer's testimony to support an inference that Odom was aware of the drug paraphernalia, much less that he had the power and authority to exercise dominion and control. Assuming Odom was found in the room, no information was presented to suggest that he was anything other than a temporary visitor, and, more importantly, there is nothing stating that the drug paraphernalia was in plain view.

Kaizer testified only that the drug paraphernalia was found after consent was given to search the motel room, with some of it being found in the bathroom and the rest of it on a table in the bedroom. And, for all a judicial officer would know, the drug paraphernalia on the table could have been covered by an item of clothing or towel or located in a sack or some other container. Further, even if the items were in plain view, Kaizer presented no testimony about the layout of the room, and there are motel rooms where the entry or sitting areas are separated from the bedroom and bath. A person who is just a visitor may only have had access to the former, but not the latter.[4]

---

[4] If Kaizer had testified that Odom was in the room where the drug paraphernalia was recovered and that the drug paraphernalia was in plain view, that would be sufficient to draw the inference that Odom had knowledge of the drug paraphernalia, but it would be a close question whether it would be enough to draw the inference that Odom had the power and authority to exercise dominion and control for the reasons stated by the Florida Court of Appeals in Sundin. While the question in Sundin was whether there was sufficient evidence to establish proof of constructive possession beyond a reasonable doubt, there are cases where courts have held that contraband in plain view was not enough to establish probable cause of constructive possession on the part of a person who is merely a visitor. State v. Vandiver, 876 P.2d 205 (Kan. Ct. App. 1994); People v. Simmons, 569 N.E.2d 591 (Ill. App. Ct. 2nd Dist. 1991); State v. Myers, 637 P.2d 1360, 1362 (Ore. Ct. App. 1981).

For example, in State v. Vandiver, the Kansas Court of Appeals concluded that probable cause was lacking to believe the defendant in that case was in possession of marijuana that was found on a living room amongst the defendant and five other individuals who were in the process of playing video games. The court stated:

> Applying the aforementioned rationale to this case, we could find no evidence showing Wilson believed defendant and the four other individuals, excluding the one individual he arrested immediately upon entering the living room, were anything more than social guests of Moneymaker.

(continued...)

As previously discussed, mere suspicion, surmise, and conjecture are not enough to establish probable cause.  Given the paucity of information in Kaizer's testimony, a reasonable judicial officer would likely not find probable cause for the possession of drug paraphernalia charge based on what remains of Kaizer's testimony after excising the critical fact that the room was registered to Odom and inserting the information that it was registered to a third person.  Cf. Chisum v. Washington State, 661 F.3d 380, 391 (9th Cir. 2011) (the fact that several successive inferences needed to be drawn to establish probable cause reduced the possibility that the crime charged had been committed to below a "fair probability"); Holmes v. Kucynda, 321 F.3d at 1079-84 (police were not entitled to qualified immunity upon summary judgment from claim that they provided information in support of a warrant for arrest of possession of drugs by a person who was simply a visitor); Hunter, 219 F.3d at 830-31 (mere suspicion and conjecture not enough).  Further, even if there is some doubt

---

[4](...continued)

Nor was any other evidence presented to link defendant to the odor of burnt marijuana or to the marijuana on the living room floor. Moreover, the State failed to introduce any evidence that the living room was used exclusively for the purchase or sale of marijuana. Aside from defendant's presence in the house, Wilson had no reason to believe defendant had any drugs in his possession. Probable cause requires more than mere "[b]ald conclusions, mere affirmations of belief, or suspicions." State v. Morgan, 222 Kan. 149, 151, 563 P.2d 1056 (1977). Therefore, we conclude that the evidence does not support a finding of probable cause.

876 P.2d at 211.

However, the cases are highly fact dependent and slightly different facts may lead to another conclusion.  For example, one frequently cited case is United States v. Holder, 990 F.2d 1327 (D.C. Cir. 1993), where the court concluded there was probable cause to arrest the defendant who was one of two persons in an apartment where  a number of ziplock bags containing crack cocaine were found out in the open on a table along with utensils for packaging the drugs.  The court stated in part:

More crucially, in this case the drugs were openly on display, and therefore appellant's proximity to the drugs clearly reflected his knowledge of, and probably his involvement in, narcotics activity. Even if the drugs were not Holder's and instead belonged only to Jones, the circumstances indicated that Jones trusted Holder and considered him sufficiently complicit to allow him a full view of the drug distribution scene. Unlike the situation in Ybarra, where the defendant's presence in a public tavern was itself ostensibly innocent, Holder's presence in a private apartment just a few feet from a table full of cocaine can hardly be so described. This is not a case in which the officers' probable cause depended partly on mere "propinquity to others independently suspected of criminal activity." Id. at 91, 100 S.Ct. at 342 (emphasis added). The grounds for suspecting Jones applied almost equally to Holder.

Id. at 1329.

about this conclusion, it would be better in this particular case to resolve the qualified immunity issue upon a more complete set of facts.[5]

Kaizer may point to the two pieces of information set forth in <u>Odom v. State</u>, which are not contained in Kaizer's testimony, in determining whether there was sufficient other evidence to establish probable cause: (1) that Odom, Johnson, and Smith were all present in the room at the Select Inn when police arrived, and (2) that the drug paraphernalia was in plain view. At this point, it is not clear what the North Dakota Supreme Court relied upon for these additional "facts."[6] In any event, Odom has not pled these "facts." Also, since these facts were not material to court's decision in <u>Odom v. State</u>, they are not binding upon Odom here based on the authority cited earlier. Consequently, it would be inappropriate at this stage of the proceedings to consider this additional information, although it *may* be "grist for the mill" in a later motion for summary judgment.[7]

---

[5] Probably for good reason, Kaizer has not argued that, even if probable cause was lacking after correction of his testimony for the offenses of possession of drug paraphernalia and marijuana, criminal activity was afoot and probable cause existed for some other offense, such as terrorizing or menacing, based on Johnson's 911 call. <u>See</u> N.D.C.C. §§ 12.1-17-04(1) (terrorizing) and 12.1-17-05 (menacing). It appears that most of the courts that have considered such an argument have rejected it. <u>Kuslick v. Roszczewski</u>, 419 Fed.App'x. 589, 2011 WL 1345063 (6th Cir. 2011) (unpublished); <u>Johnson v. Knorr</u>, 477 F.3d 75, 83–84 (3d Cir. 2007); <u>Posr v. Doherty</u>, 944 F.2d 91, 100 (2d Cir. 1991); <u>see Harrington v. City of Council Bluffs, Iowa</u>, __ F.3d __, 2012 WL 1470266, *6 (8th Cir. 2012) (Colloton, J., dissenting) (citing cases); <u>but see Brooks v. City of Aurora</u>, 653 F.3d 478, 485 (7th Cir 2011).

[6] It is possible that this information was presented at the preliminary hearing following Odom's arrest.

[7] Whether Kaizer can include this, and possibly other information that was not contained in his testimony but was known at the time the warrant was requested, as part of the process for correcting his testimony is a question for another day. <u>Compare Martinez v. City of Schenectady</u>, 115 F.3d 111, 15 (2d Cir. 1997) ("The 'corrected affidavits' doctrine, therefore, requires us to examine all the information that the officers actually possessed when they applied for the search warrant.") <u>with Sherwood v. Mulvihill</u>, 113 F.3d 396, 403-405 (3rd Cir. 1997) (Sloviter, C.J., dissenting) (defendant sued for intentionally or recklessly submitting false information in support of a warrant should not be permitted to provide supplemental information supporting probable cause as part of the affidavit correction process, even though that may be appropriate in criminal case when a <u>Franks</u> challenge is made); <u>Ladd v. Pickering</u>, No. 4:05-cv-916, 2010 WL 3892139, *8 (E.D. Mo. Sept. 29, 2010) (refusing to consider additional evidence bolstering probable cause that was available when police used other false and misleading information to obtain a warrant ). On the other hand, if this additional information was developed later, then it, arguably, could not be used to justify the judicial deception and premature arrest if Odom is determined to have viable claim. <u>Cf. Lambert v. City of Dumas</u>, 187 F.3d 931, 935 n. 6 (8th Cir.1999); <u>Peterson v. City of Plymouth</u>, 60 F.3d 469, 473–77 (8th Cir.1995).

### d. Kaizer's request for judgment on the pleadings should be denied

Based on the foregoing, Kaizer has failed to demonstrate that he is entitled to qualified immunity at this stage of the proceedings. However, he is free to renew the defense upon a later motion or at trial if one is necessary. This is because the court is limited at this stage to accepting what Odom has properly pled as being true and the actual facts may be different. For example, Kaizer's testimony is ambiguous with respect to whether the information about the room being registered to Odom was supplied by Riddle Johnson or whether it was information developed by the police. If it was the former, there may be an argument that Kaizer did not act intentionally or recklessly in supplying information that turned out to be wrong, particularly if the police had not developed contrary information in the sixteen months before Kaizer gave his testimony in support of the complaint and the arrest warrant.[8] Also, Kaizer can later proffer any additional information the police may have had at the time Kaizer procured the warrant and make his argument for why that information should be considered in determining whether probable cause existed after any false or misleading testimony is properly corrected.

Finally, Kaizer acknowledges in his brief that the Eighth Circuit in <u>Bagby</u> left open the question of whether qualified immunity is ever appropriate when a law enforcement officer knowingly provides false information that is material to the determination of probable cause.

---

[8] For example, if Johnson told police that the room was registered to Odom, but prior to seeking the complaint and arrest warrant the police talked to the desk clerk and found out the room was registered to someone else, this would be information that the police would be obligated to provide to the judicial officer because it clearly would be material to the determination of probable cause. <u>See</u>, <u>e.g.</u>, <u>Hunter v. Namanny</u>, 219 F.3d at 830 ("[A] reconstructed affidavit must also include material allegedly omitted with reckless disregard of the truth. [citations omitted] Where, as here, the allegedly omitted information would have been clearly critical to the probable cause determination, recklessness may be inferred.").

<u>Bagby</u>, 98 F.3d at 1099 n.2.  If Kaizer's motion is denied, this an issue that need not be resolved now.[9]

### C. The argument that Odom suffered only nominal damages

Kaizer also argues as part of his motion for judgment on the pleadings that Odom suffered no actual damage and that the court should conclude now that he would be entitled to only nominal damages if prevails.   While this case presents difficult damage questions if Odom has a viable claim, and while it does appear his damages would be limited because of what occurred following his arrest, it is not at all clear that he would be limited to only nominal damages.

Considering for the moment only the first set of criminal charges, there may be an argument that <u>Heck</u> precludes any recovery of damages for false imprisonment if Odom's sentence for "time served" includes the time dating back to his initial arrest.  <u>Heck</u>, 512 U.S. at 486-87 (applying the preclusion rules established in that case, <i>i.e.</i>, the <u>Heck</u> bar, to both convictions and sentences).  But, even if <u>Heck</u> is not a bar, there would remain the false arrest. And, while the damages for the premature arrest may be minimal, it would be premature to conclude now that jury would award only nominal damages. <u>See</u> <u>Boyce v. Woodruff</u>, 979 F. Supp. 817, 831 (N.D. Ind. 1997) (jury should be allowed to determine whether an arrest that was premature by only three hours resulted in more than nominal damages).

---

[9]  It appears doubtful that the Eighth Circuit  would conclude that the "corrected affidavit" doctrine does not apply when the false information in support of a warrant application is given knowingly as opposed to recklessly.  In the cases following <u>Bagby</u>, the court has not repeated the caveat it expressed in that case.  <u>See</u> <u>e.g.</u>, <u>Morris v. Lanpher</u>, 563 F.3d 399, 403 (8th Cir. 2009); <u>Riehm v. Engelking</u>, 538 F.3d 952, 966 (8th Cir.2008); <u>Hunter</u>, 219 F.3d at 829-830; <u>Hulse</u>, 1999 WL 1295320 at *1.  Further, other courts appear not to draw this distinction.  <u>See</u>, <u>e.g.</u>, <u>Smith v. Almada</u>, 630 F.3d 931, 937-38 (9th Cir. 2011); <u>Reedy v. Evanson</u>, 651 F.3d 197, 213-14 (3rd Cir. 2010); <u>Bruner v. Baker</u>, 506 F.3d 1021, 1026 (10th Cir. 2007);  <u>Martinez v. City of Schenectady</u>, 115 F.3d 111, 114-15 (2d Cir. 1997).

Further, if <u>Heck</u> is not a bar to the collection of damages for the imprisonment immediately following the arrest, then the next thing that arguably may have broken the chain of causation in terms of any wrongful detention based upon the alleged lack of probable cause (and again considering only the first set of charges) would likely have been the preliminary hearing, which it appears was held more than a month later.  <u>Cf.</u> <u>Wallace</u>, 549 U.S. at 389-390; <u>Richardson v. City of New York</u>, No. 02 CV 3651, 2006 WL 2792768, *4 (E.D.N.Y. 2006) (damages for claim of false imprisonment under § 1983 measured only to the time of arraignment or indictment whichever occurred first);  <u>Broughton v. State</u>, 335 N.E.2d 310, 316 (N.Y. Ct. App. 1975); <u>see</u> <u>generally</u> 32 Am. Jur. 2d <u>False Imprisonment</u> § 138 (Database updated Feb. 2012).

However, there is also the second set of charges arising out of the new criminal activity that the police uncovered following Odom's arrest and, at this point, it is not clear how that might impact Odom's damages.  Odom was clearly being held on the second set of charges when he entered his plea on the first set of charges and was sentenced to time served.  What is not clear, however, is when he was officially held in custody on the second set of charges prior to that point, if ever.[10]  Also, putting aside when Odom might have been officially held on the second set of charges, there may be grounds for arguing that he would have been both arrested and held in custody for the other criminal activity, even if he had not been arrested and held on the first set of charges.  But, it would be premature to consider such an argument now and it may very well be a question for the jury.

---

[10]  It is clear that Odom cannot claim damages for his continued incarceration on the second set of charges based a theory that the police would never have uncovered that activity if he had not been wrongfully arrested on the first set of charges.  For one thing, these damages would be barred under <u>Heck</u>,, given that success on this theory would necessarily imply the invalidity of his conviction and sentence on the second set of charge.  512 U.S. at 486-87.  In addition, causation would be too attenuated legally for reasons already cited, if not also factually.

Given the foregoing, it would premature to rule on the damage issues, even if it was appropriate for a motion for judgment on the pleadings.

## III.    <u>RECOMMENDATION</u>

Based on the foregoing, it is recommended that Kaizer's motion for judgment on the pleadings be denied without prejudice to Kaizer being able to renew any of the arguments that he has  made at a later stage in the proceedings.

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 25th day of June 2012.

_/s/  Charles S. Miller, Jr._____
Charles S. Miller, Jr.
United States Magistrate Judge